# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 1:13CR00025 |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CRYSTAL LYNN DESKINS, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant Crystal Lynn Deskins; and Brian M. Ely, Abingdon, Virginia, for Defendant Jody Deskins.*

In this Opinion, I resolve sentencing objections by the defendants relating to their advisory sentencing guideline range and the amount of forfeiture sought by the government.

I

The defendants, Crystal Lynn Deskins and her spouse, Jody Deskins, pleaded guilty without plea agreements to Count One of an Indictment charging them with participating in a conspiracy to structure financial transactions for the purpose of evading the reporting requirements, in violation of 18 U.S.C.A. § 371 (West 2000), and to Counts Two through Eight of the Indictment, charging them

with substantive structuring offenses, in violation of 31 U.S.C.A. § 5324(a)(3) (West 2003). In connection with their sentencings, the defendants have objected to the calculation of their offense levels based upon an alleged pattern of unlawful activity involving more than $100,000 in a 12-month period. *See* U.S. Sentencing Guidelines Manual ("USSG") § 2S1.3(b) (2013). In addition, they have objected to the amount of a forfeiture money judgment sought by the government. A hearing has been held on these objections and they are ripe for decision.

II

The facts of the case are generally undisputed. In 2010 the Deskins, unemployed welfare recipients, received a monetary settlement in the net amount of $596,319.48 from a lawsuit over the death of their infant son. The money was deposited into their bank account and within about eight months they had spent it all on themselves and their two other children, including buying seven vehicles, multiple televisions sets and computers, a family vacation, clothes, toys, and games. They also bought a home for approximately $189,000.[1]

---

[1] While there is no direct evidence of it, it is also a fair inference that they spent some of the money on drugs. Mr. Deskins was convicted in 2012 for possession of drug paraphernalia. Later, in 2013, after a traffic stop, police found in their car marijuana, six syringe needles, and morphine and muscle relaxant pills for which they had no prescriptions. Mrs. Deskins recently violated a state bond by testing positive for use of oxycodone. According to each Presentence Investigation Report ("PSR"), they have

The Deskins did not tell the welfare agencies about the settlement and continued to receive benefits. Mr. Deskins told the federal agent investigating the case that they had been advised by their lawyer that they should not report the money to anyone. They were also told, he said, that they should not go over $10,000 in cash withdrawals from their account because "it was less of a hassle and they would have to answer to the law enforcement authorities if the withdrawals were over $10,000.00" (Joint Sentencing Mem. Ex. 1, at 4.) True to this advice, they engaged in numerous cash withdrawals of less than $10,000 from December of 2010 until July of 2011. A number of these withdrawals — but not nearly all — were charged in the Indictment. The Indictment charged only those withdrawals where there were multiple withdrawals on one day or on successive business days, which together exceeded $10,000. For example, Count Three of the Indictment charged that the defendants withdrew $9,500 from their checking account on Tuesday, January 25, 2011, and the same amount again on the next day, January 26, 2011. Count Eight charged that the defendants withdrew $2,000 on Friday, July 1, 2011, $5,000 on the next business day, Tuesday, July 5, 2011, and $5,000 on Wednesday, July 6, 2011.

Based upon his review of the government's discovery material, the probation officer who prepared the defendants' PSRs determined that while Counts Four and

---

admitted that during the time period in question in this case they were each a "heavy user of prescription opiates." (Crystal Lynn Deskins' PSR ¶ 46; Jody Deskins' PSR ¶ 45.)

Seven of the Indictment charged that the described withdrawals had been made on the same day, in fact they had been made several days apart.[2] Based upon this information, the defendants argue that the structured withdrawals charged in Counts Four and Seven should be disregarded, thus reducing the structured amounts charged in the Indictment to less than $100,000. Accordingly, they contend, they are entitled to a reduction in their offense levels pursuant to USSG § 2S1.3(b)(3). If their argument is adopted, each defendants' Total Offense Level drops from 13 to 4.

The government also seeks forfeiture in the form of a money judgment for $103,305, the total amount of the structured transactions charged in the Indictment. The government hopes to use this judgment to levy on the Deskins' new home, the

---

[2] The probation officer reported this discrepancy in the PSRs, as follows:

> Count four of the Indictment states that on April 19, 2011, Jody and Crystal Deskins made two withdrawals, one in the amount of $5,955 and another in the amount of $9,550. However, upon investigating bank records from First Bank & Trust, it was discovered that a withdrawal in the amount of $5,955 was made on April 19, 2011, and a separate withdrawal in the amount of $9,550 was made on April 25, 2011.
>
> . . . .
>
> Count seven of the Indictment states that on June 2, 2011, Jody and Crystal Deskins made two withdrawals, one in the amount of $9,950 and another in the amount of $2,000. However, upon investigating bank records from First Bank & Trust, it was discovered that a withdrawal in the amount of $9,950 was made on June 2, 2011, and a separate withdrawal in the amount of $2,000 was made on June 20, 2011.

(PSR ¶¶ 12, 15.)

only asset they have remaining. The defendants contend that such an amount is constitutionally excessive and argue for a forfeiture of no more than $15,000.

For the reasons that follow, I will deny the defendants' objections.

III

A withdrawal can constitute a structuring offense even when it is not one of multiple withdrawals exceeding $10,000 on one day. Even though the transactions in Counts Four and Seven of the Indictment were made days apart, they are still structured transactions. Structuring occurs when one or more persons conducts or attempts to conduct one or more transactions for the purpose of evading reporting requirements. 31 C.F.R. § 1010.100(xx) (2013). "The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition." *Id.*

It does not make a difference for sentencing purposes whether a defendant engaged in perfect structuring, where transactions do not exceed $10,000 on one day, or imperfect structuring, where combinations of transactions exceed $10,000 on one day. Distinguishing between the two would lead to divergent sentences based on daily activity rather than an overall pattern of unlawful activity, and would result in different sentences for the same amount of structured funds.

*United States v. Peterson*, 607 F.3d 975, 981 (4th Cir. 2010) (holding that the Sentencing Guidelines should not be read to distinguish between perfect structuring offenses and imperfect structuring offenses). "[E]ach separate deposit is an unlawful act, as the government could base a prosecution on any one *or* all of the deposits . . . ." *Id.* The daily sum of structured withdrawals is irrelevant.

The defendants contend that they are entitled to the so-called safe harbor provision of USSG § 2S1.3(b)(3), which reduces the offense level to a level 6. However, this provision does not apply in this case. A defendant qualifies for this provision if (1) the defendant did not know or believe that the funds were proceeds of unlawful activity or were intended to promote unlawful activity, (2) the defendant did not commit the offense as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period, (3) the defendant did not act with reckless disregard as to the source of the funds, (4) the funds were the proceeds of lawful activity, and (5) the funds were to be used for a lawful purpose. USSG § 2S1.3(b)(3). The defendant carries the burden of proving that the safe harbor provision applies. *United States v. Abdi*, 342 F.3d 313, 317 (4th Cir. 2003) ("[T]he defendant, not the government, has this burden of showing entitlement to any *reduction*."). The safe harbor provision has stringent requirements, and "[a] defendant who engages in multiple transactions and crosses the $100,000.00 threshold simply cannot enter that narrow opening." *Peterson*, 607 F.3d at 980.

Since the fact that the Indictment misidentified the exact dates of certain transactions does not change the unlawful nature of those transactions, the proper amount of structured funds for the court to consider is the full amount charged of $103,305.[3] Because the defendants pleaded guilty to and clearly engaged in serial structuring over a 12-month period in excess of $100,000, the safe harbor provision does not apply.

IV

The defendants also object to the forfeiture money judgment sought by the government as excessive. A forfeiture is "excessive" under the Eighth Amendment if it is "grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian,* 524 U.S. 321, 337 (1998). To determine the gravity of the offense, the Supreme Court has considered four factors: (1) the nature and extent of the criminal activity; (2) its relation to other crimes; (3) its penalties; and (4) the harm it caused. *United States v. Ahmad,* 213 F.3d 805, 813 (4th Cir. 2000); *see Bajakajian,* 524 U.S. at 337-38. In *Bajakajian,* a defendant failed to report that he was transporting more than $10,000 out of the United

---

[3] The government is allowed to prove the date of commission of a crime different from that charged in the indictment, as long as it is reasonably near such date. *United States v. Schocket*, 753 F.2d 336, 341 (4th Cir. 1985). The erroneous dates of withdrawals charged here are reasonably near the actual dates, taking into account the continuous nature of the illegal conduct over an extended period of time.

States. *Id.* at 325. The Supreme Court held that a forfeiture of the full $357,144 that the defendant had attempted to transport would violate the Excessive Fines Clause. *Id.* at 337. The Court considered (1) that the defendant's offense was a single reporting violation; (2) that the defendant was trying to pay a lawful debt with proceeds from legal activities, and did not fit within the class of persons, such as money launderers, drug traffickers, or tax evaders, for whom the statute was principally designed; (3) that the maximum sentence that could have been imposed under the Sentencing Guidelines was $5,000 and six months' imprisonment, which confirmed a "minimum level of culpability"; and (4) that the harm caused by the reporting violation was minimal because the government experienced only minor harm from being deprived of information. *Id.* at 337-39.

Applying these factors to the case at hand, I find that the forfeiture money judgment sought by the government is not excessive. Serial structuring is a more serious offense than a single failure to report. The defendants made multiple withdrawals over the course of eight months rather than a single omission. When the defendants "furtively introduce[ed] large amounts of unreported cash into the financial system," they "frustrated a primary objective of the Bank Secrecy Act — to ensure the maintenance of bank records necessary to the investigation and prosecution of criminal, tax, and regulatory offenses." *United States v. $134,750 U.S. Currency*, 535 F. App'x 232, 241 (4th Cir. 2013) (unpublished). The

defendants tried to circumvent reporting requirements, failed to tell welfare agencies about the settlement, and continued to receive benefits. Additionally, the forfeiture sought by the government is $103,305, and the structuring Counts in the Indictment each carry a maximum statutory fine of $500,000. 31 U.S.C.A. § 5324(d)(2) (West 2003); 18 U.S.C.A. § 3571 (West 2000). "That the forfeiture amount falls within the fine range authorized by Congress raises a presumption of constitutionality." *$134,750 U.S. Currency*, 535 F. App'x at 241. The forfeiture amount should be compared to the maximum statutory fine rather than the maximum fine suggested under the Sentencing Guidelines. *See United States v. $79,650.00 Seized from Bank of Am.*, 650 F.3d 381, 385 (4th Cir. 2011) (agreeing with the government that "a maximum statutory fine of $250,000 — rather than the advisory Guidelines fine — was the appropriate measuring stick for an excessive fines proportionality analysis."). In this case, the forfeiture sought by the government is well under the maximum statutory fine for a single structuring count. Finally, structuring causes significant harm. It "deprive[s] the government of important information," and "affect[s] a financial institution's ability to comply with the law and jeopardize[s] the funds of other persons." *Ahmad*, 213 F.3d at 817.

The defendants' remaining argument does not demonstrate that the forfeiture is excessive. The defendants assert that they are "disabled with no future prospects

other than reliance on family, charity and public assistances." (Joint Sentencing Mem. 6.) They argue that the court should consider whether forfeiture might deprive them of their future livelihood. *See United States v. Levesque*, 546 F.3d 78, 83-84 (1st Cir. 2008) (holding that "the notion that a forfeiture should not be so great as to deprive a wrongdoer of his or her livelihood is deeply rooted in the history of the Eighth Amendment"). However, the defendants have not demonstrated that a money judgment of this size will place them in any worse position than they were before they spent the settlement money through the use of structured transactions. They have relied upon public assistance in the past and may in the future, unaffected by this forfeiture, particularly since they have an asset — their new house — that can satisfy the requested forfeiture money judgment with value to spare. The forfeiture does not violate the Excessive Fines Clause on this ground.

V

For the reasons stated, it is **ORDERED** that the defendants' sentencing objections are DENIED.

ENTER: February 20, 2014

/s/ James P. Jones
United States District Judge